of this morning, Campbell v. Sussex County Federal Credit Union, number 13-4141, Messrs. Weir and Graziano. Whenever you're ready, Mr. Weir. Whenever you're ready, Mr. Weir. My name is Richard Weir. Shannon Brainerd is an associate of our firm Marshall, Ben E., Warner, Coleman and Goggin. We represent the appellant Paula Campbell, who is here today. And I would like to reserve five minutes for any rebuttal, if necessary. That's fine. When were you first engaged in this case? Was it 2009 or when? We were engaged, I think 2009, prior to the request, when I requested the benefit under the plan on December 18, 2009. So you were sometime in the fall? Pardon? Sometime in the fall of 2009? Yes. Okay. Can you categorize this contract? Is this a unilateral contract? Is it one way? Yes. I think an ERISA benefit offer is unilateral. I think... Doesn't that cause you a consideration problem? I don't think it does, because I think the performance, when you accept a unilateral, you can accept it by performance. And in this case, the ratherment of... Actually, more to Judge Ambrose's point, if it's a unilateral contract, aren't you conceding that there was no return promise? No, there wasn't. Respectfully, I think the fact that this is an offer of a benefit, which was in the future, a retirement that had not yet occurred, so consequently... Would you say that again? This is an offer in the future? It was an offer of a benefit, which had not yet occurred, because the offer was when you retire, when you retire, you will then get a benefit. Now, the problem with Judge Ambrose's decision, respectfully, is that, aside from the fact that he did not do an analysis of whether it was ambiguous or not, the problem with Judge Ambrose's decision is that he erroneously concludes that there's no consideration for this offer. In other words, once you have an offer, then under unilateral contract purposes, her continued work at Diamond State provided the consideration, her continued performance. So it would be true then the day after... What if the day after she negotiated that, or you negotiated this contract, she said, thank you very much, I'm leaving? Well, first of all, that is not what happened. No, no, no. I know that's not what happened. I understand. And Your Honor is citing to her deposition testimony six or seven years later that I could have retired a day after. You negotiated a contract that gives her health benefits until she dies. But as soon as the contract is negotiated, she leaves her employment, and the question is, is she entitled to health care benefits for the rest of her life? Yes. To answer your question specifically, Your Honor, if she worked a day or two days after January 24, 2006, she would have been entitled to these supplemental retirement benefits, where Judge Andrews, I believe, created an error of law, was that he looked at simply the question of whether she could have, what her subjective intent was six years later. Well, I think what's troubling, at least for me, is what is continuous service? I'm sorry? What is continuous service? She got this lifetime health package for continuous service. I can't remember the other word. Was it loyal? Loyal and continuous service. Loyal and continuous service. Correct. That was the consideration? Yes, Your Honor, and our position is that continuous in the ordinary plain definition of that language, which courts should engage in in interpreting a contract, is continuing. And if you look at the context, the four corners of this contract, which Judge Andrews did not do, the four corners of this contract were Paula has been employed, Paula continues to be employed, Paula is therefore, in December of 2005, a motion is approved to provide her with supplemental retirement benefits. The problem is I tend to look at contracts as having more definite language so that you know when it terminates, you know when it begins, you know what the conditions are. But here, loyal and continuous service, as I said before, could amount to one day, could be a week. I think any amount of It could be 20 years. Correct. I think any amount, so long as she continued until she retired. Is that definite enough for us to say that we have consideration in a lawful contract? Yes, it is for the following reasons. If you look at the four corners of the document and you look at what was being provided, what was being provided was a supplemental retirement benefit which would kick in in the future. So by definition, if you look at the context of this contract, she would have had, she did for two years, she would continue to work at Diamond State and that continuous service was consideration for the contract and her continued performance for two years and acceptance by Diamond State. Paying her the supplemental benefit in 2007 when she retired is an acceptance of her continuous service. If the language had read, reward for loyal and past service, but it doesn't. And if you look at the context of this contract, not going outside of it, she did not submit, as did Eva Thomas, for example, she did not submit a date certain for her retirement. It would be different if it said loyal and continuous service, but you must pay for at least five years. Now, if it said that, but there's no requirement, Your Honor, in the law, but it would be a more definite contract. Well, I guess you're right, but I didn't negotiate it. Mr. Zaplicki is the person who drafted that in 2005. Was he working for the company? Did he work for a private firm? Do you know? Yes, I do. He was with his own firm. And whom did he represent? I can't honestly answer that for the following reasons. He doesn't recall who he represented. There's an issue. He provided a plan to Diamond State. I can tell you, I believe, that he probably, if you look at the extrinsic evidence, he probably considered that he represented Paul. She never paid him. But the reason I say that is that when there was the merger between Diamond State and Sussex in 2009, Paula asked him to follow up on what the president of Sussex said, that they would honor this plan. She asked him for his advice, and in the record there is a letter from him saying that they are bound by the contract. Sussex is bound by the contract because of the successor clause. Do you have a precedent for us that upholds a contract and concludes that it's valid despite lacking a payment? Is there authority? Yes. Do you have case law support for that proposition? No, because I don't believe any court has required that. That's the reason we're here. That's why you have, for example, performance can create consideration. Performance, which it did. Performance can create consideration. I mean, as long as you're paying 235 every year for your team, that's sufficient. If you're Ryan Howard, you get a big contract. If you're in 222. Well, yes, she continued to perform. It was her understanding, and it was Diamond State's understanding, that she would remain. She did not announce her retirement. So I don't think you can look, as Judge Andrews did, you can just simply look at the language and say, we're going to ignore the nature of the benefit because the nature of the benefit is until you retire, you will continue to work here. Had she stopped working, then the benefit would have kicked in. So it was understood her loyal and continuous or continuing service, we'd say that's not a term of art. That is clear language, and it's consistent with the party's actions because she then continued to work and serve Diamond State, and when she retired in November 2007, when she left, then the benefit kicked in. It's a supplemental retirement benefit. So unlike other potential consideration, the consideration, the carrot, I'm sorry, my time's up. No, it's okay. Finish that sentence, and I have just one quick factual question for you. The carrot was if you continue with your loyal and continuous service, when that continuous service ends, we'll give you this benefit, and that's what they did. Now, you didn't ask for a jury trial, did you? No. So it would be a trial by the judge here. We had a trial by the judge. But this was resolved on summary judgment, was it not? It was resolved on summary judgment on one issue. Consideration. Less than a week before the pretrial conference, there were a lot of issues of factor on her that we were prepared to present expert testimony on. We had witnesses, and Judge Andrews, the day of the pretrial conference, orally said, I'm graining defendant's motion for summary judgment. Didn't say why, didn't say how, and we didn't get that decision until like 16 days later. All right. When we get you back in rebuttal, one of the things you might want to consider dealing with is what would you have put in at trial to show that there was consideration for the grant of health benefits post-retirement for Ms. Campbell? Thank you. Mr. Graziano? Good morning. Can you hear me, Judge Nygaard? I can. Thank you. Thank you. May it please the Court, my name is Michael Graziano. I represent Sussex County Federal Credit Union. Now, this is a contract, or what was given to Ms. Campbell, was essentially based on what was done previously for Ms. Eva, or they called her Eve Thomas. Is that correct? That's correct. Diamond State had a prior employee named Eve Thomas, who was entered into a retirement benefits plan with Diamond State Federal Credit Union. And the issue, when you first look at the Thomas plan, which goes back to 88, I think Mr. Zaplicky just pulled this form off, and he used that as the basis for what he drafted for the board for Ms. Campbell. It says, in consideration of Thomas' long and valuable service to the credit union and her continued services up to the time of her retirement. So it sounds like, you know, there's going to be something further. And then with regard to Campbell, it says, now the purpose is to reward the employee for a loyal and continuous service to the company. So we don't quite know what continuous service is. That helps you. That cuts in your favor. What doesn't cut in your favor is that Thomas, everyone knew when Thomas left in 88, she was getting ready to retire almost immediately after this plan went into effect. In fact, she retired within, what, a month and a half, two months? Whereas Campbell stayed another almost two years. Isn't that correct? That's correct. So why isn't that something that should be resolved at trial and not leave us to guess at summary judgment what in the world is going on here, what continuous service means? You heard Judge Fuentes ask about that. Well, I believe that counsel had the, and Ms. Campbell had the opportunity to explain what she was going to present at trial during summary judgment briefing and what would prove that this promise is what induced her to, in fact, stay for another year and a half. And she just quite simply did not do it. The only evidence in the record which speaks to, which is outside of the four corners of the contract, which speaks to the intent of the parties is Ms. Campbell's own testimony that not only on the day after, not only that she could have retired the day after the plan became effective and been entitled to the benefits, but the previous question, she actually said that on the day that it was signed, she was entitled to the retirement benefits. So that speaks to Ms. Campbell's, that's the best possible evidence, Ms. Campbell's own intent. But Judge Amber was asking a comparison between, is it Thomas or Thompson? Yeah, it's Thomas. Got a package and isn't this pretty much the same? With the exception that one, everyone knew she was leaving, and the other one people didn't know when she was leaving and she stayed on for another couple of years. I believe that the two circumstances are not the same. In Ms. Thomas' case, I believe the plan actually set forth a date for her retirement, and while it's a short period and everybody knew she was going to retire shortly thereafter, that becomes a question of adequacy of the consideration, not whether consideration exists in the first place. And I believe that a couple months of service is adequate consideration in exchange for a promise of benefits. Well, then it sounds like two years should be adequate consideration too, even more. Like, let's see, 24 months is about 12 times two months. If that was what induced Ms. Campbell to in fact stay for the year and a half, then I would agree with that statement. But there's simply no evidence which supports it. But doesn't she get a chance at trial to put in that evidence? That's all we're saying. I mean, it looks one could make an argument here that Rule 56 is being used like Rule 56 is often used as a way to clear dockets and not to get matters to their merits. I don't believe that that's the case, and Ms. Campbell did have the opportunity in response to the summary judgment motion, she could have submitted an affidavit saying that her intent, this was her intent, she could have submitted an affidavit from the Diamond State employees who were responsible for drafting the contract. But there's nothing like that in the record, and it's because it doesn't exist. It's because Ms. Campbell's own testimony is that she believed she was entitled to this benefit the moment that the plan was signed, which proves that it could not possibly have induced her to stay for a year and a half. Well, help me out here. Is the law supposedly that if I just give you a reward for what you've done for me in the past, there's no consideration for that? That's correct. But if I say to you, you're going to get health benefits if you stay, there is consideration. Is that what you're saying? Yes, I believe that there has to be. Well, the standard is that it has to be sufficiently definite. We have to be able to determine what the obligation is that the employee is supposed to fulfill. The problem, we went looking for some case law here, and the only circuit case that we really found was a nice circuit case called Vizcayano v. Microsoft at 120 Fed 3rd, 2006, and it says, quote, few employee benefits are mere gratuities or a result of unadulterated altruism. Most are for services rendered or for the purpose of inducing further rendering of services. They help us to guarantee a competent and happy workforce. So when you look at that, and also there's some Pennsylvania cases that says retirement benefits are not manna that falls miraculously from the sky. I mean, the idea is that you're giving somebody something, and here it talks about continuous service, which we don't quite know what it means, and I'm unsure as to how that can be resolved just as summary judgment without a full airing on the merits. Well, typically, the problem from Sussex's perspective is that there's just no evidence in the record that continuous means anything other than your performance from when you began with Diamond State until the date that the plan is signed. Well, that's a retrospective view, but is there anything that tells us we can't give it a prospective view? In other words, the contract is signed. We're going to do this for you for loyal and continuous service. Why can't you give that a prospective view? It would have said continued, I mean, or I don't know. I mean, I don't know what it could have said, but somebody needs to tell us what that means. And I believe that Ms. Campbell did during her deposition when she said that she was entitled to the retirement benefit on the day that it was signed, and that if she could have retired the next day and was entitled to the benefits. But she didn't. So, I mean, does that – I mean, in effect, maybe that's asking us to consider the fact that she didn't and that she stayed on for two years. Is that enough? I mean, you don't need a whole – you know, consideration can be a peppercorn. It's a very low bar. That's correct. And Sussex's position is that there's not even a peppercorn in this case. What was her position in her deposition again that she said that I'm entitled to this? She – I have the exact quote marked off here so I can read it. It's on page 219 of the joint appendix. Ms. Campbell's answer to a prior question is, the benefits plan was adopted by the board effective January 24, 2006. Question, okay, so on and after January 24, 2006, as you understand it, you were entitled to this retirement plan, is that correct? Yes. Okay, so, for example, you could have retired the next day, January 25, 2006, and you would have been entitled to a retirement plan, correct? Correct. So you view this as a reward or a gift as opposed to a prospective contract? Yes, that's correct. And that's moving on to the second piece of evidence that's in the record that speaks to the intent of the parties, which I believe is – we started talking about Thomas' plan earlier. The fact that Daniel Saplicki, the attorney who drafted the agreement, used the Thomas plan as a model and specifically extracted the language that had a date certain for retirement and required Ms. Thomas to continue working, I think is circumstantial proof that the parties, Ms. Campbell and Diamond State, did not – But it looks like in Thomas' case that was a reward. I don't know in Campbell's case. I mean, if everybody knows – I mean, the reality is they all knew that Thomas was retiring. And we're going to give her – in effect, we're going to give her a going away present. It's better than a watch. And so if you're saying that there's consideration there, how in the world could there not be consideration here? At least an argument. At least get her to the trial. Maybe she loses a trial. Well, the answer is that, first of all, the plan that was given to Ms. Campbell states that it is a reward. So I believe that to the extent there's a distinction based on Ms. Thomas' plan being a reward, that language is in Ms. Campbell's plan. Well, where does it say that? It's in Section B. It says the purpose of the plan is to reward the employee for a loyal and continuous service. It does say reward. But reward her for a continuous service past or past and future? I don't know. I don't know either. I agree that it's – Well, if you don't know either and I don't know, then you need to have a trial. We don't have a rationale for district court's decision that there was no continuity, really. Did district court afford a basis for his decision that there's no consideration? Yes, and the district court issued a memorandum of opinion, which in – it's in the Joint Appendix. I believe it starts on Page 3. On Page 7 of the Joint Appendix, I believe it's footnote 2. It's like a four-page opinion. Yes, it's a short opinion, but there's – It's a long and short of it. What was his reason for – I believe that it's short because it's reflective of the amount of – the lack of evidence to support Ms. Campbell's argument that there's consideration in this case. There was very little evidence that was put forward that was before the judge. One was the plan, which he addressed and said on its face, this plan does not require Ms. Campbell to do anything, and that's in footnote 2. And he moved on to address the fact that Ms. Campbell herself admitted that, in essence, it didn't require her to do anything, and that was the basis for his opinion. There was little other evidence in the record. Delaware law is what governed this contract, correct? Federal common law of contracts governs this. Was there a choice of law in the agreement at all or in the award? Whatever it was that the board did. I believe there was a choice of law provision. I believe that it's – this is an interesting question. I don't know the answer to, but I believe it would be preempted by ERISA. In large measure, it would be. Because, you know, in Delaware, there's a 1966 chancery court decision that says, the modern trend is to view voluntary pension plans as constituting offers of additional compensation and as incentives to continuing and more dedicated service. That sounds like this was – could be, might be, depending on what comes out of trial, an incentive to continuing and more dedicated service. And, in fact, the word continuous is used in the contract or the document, the plan, with respect to Campbell. Well, with respect to those two points, I'm not familiar with the case, but I don't believe that we have the first in this case. With respect to the second, there's certainly no evidence in the record, and none was presented in opposition to Sussex's motion for summary judgment that the purpose was to incentivize Ms. Campbell to stay. There was a deposition, I believe, of Regina Brainerd, who was the chairperson of Diamond State at the time the plan was adopted. And from my recollection, I don't believe there was any testimony that the purpose was to incentivize Ms. Campbell to stay. Just one other couple of questions with respect to if we get beyond this. You suggest that the one-year statute of limitations had passed and that what was sent in any event to the – that was not an exhaustion of remedies. Supposedly, the December 18 letter of Mr. Weir, you're saying it wasn't to the president? Is that what – is it? Yes, that's correct. That's putting form over substance. Who was the president in 2009? Lewis signed something as president, and then it looks like Ms. Flewett. Who was president? I believe it was Ms. Flewett. Why did Lewis say he was in one of his letters in November 6th or so? I cannot speak to that. I agree with you. I tend to agree with you that it's putting form over substance, but that is the only problem with the four prior letters that were exchanged between Ms. Campbell and Mr. Lewis, which Ms. Campbell made a claim beginning on, I believe it was October 31st, 2009, and there was a response a few days later. She asked John Lewis to reconsider. So she made a claim on October 31st, 2009, and filed a complaint in August of 2010. She would be within a year. Would she not? No, she would not, because the question is equitable tolling. The claim accrued on May 14th, 2009, when Ms. Campbell was still working for Sussex, and it was during the first pay period that Ms. Campbell was enrolled in Sussex's health insurance program. The Sussex County reduced her gross compensation by $160.58 every pay period, which I believe was bimonthly. And under the clear repudiation rule, which this court adopted in Miller v. Fortas Benefits, the reduction of a benefit provides immediate obvious notice to the claimant that there is a dispute regarding their benefit. So that's the date of accrual of the claim, May 14th, 2009. Judge Andrews agreed with that and held that the claim accrued at that time, but nevertheless found that it was timely because there was equitable tolling applied for the 180 days following Mr. Weir's letter on December 18th, 2009, because Ms. Campbell had to exhaust her benefit. Mr. Howard never responded to that letter, did he? No, no, he did not. Do you know why? I do not know why. Thank you. Thank you. Mr. Weir, back to the rebuttal. May I please the court again? Yes, there is a choice of law, governing law provision in the plan, and it is Delaware's. And on page four of the plan, paragraph five, this agreement shall be construed in accordance with and governed by the laws of the state of Delaware. Appendix 189. This case really is a one-person ERISA plan, isn't it? Pardon? It's a one-person ERISA plan. Is that what we're dealing with? It's an ERISA plan. Judge Andrews held it was a plan, yes. It's a one-person plan. In other words, it's tailored for your client. Pardon? It was tailored for your client, is that fair to say? Well, yes, it was consistent with what they had done for Eva Thomas and consistent with what they did for Paula Campbell. They didn't have to, but they did in consideration for her because the evidence on her, in part, had we been able to go to trial, and we believe that the court created errors of law in granting summary judgment and tried to construe a contract, which we say he could not resort to this so-called extrinsic evidence because we believe it's on its face. It's susceptible to at least two interpretations. We believe our interpretation was and continues. But more importantly, I think, we would have been able to show or would show that during the course of leading up to Paula's acceptance of employment with Sussex in 07, in May of, in January of 06. When was the merger with Sussex? It was 09, right? Yes, 09, but in January 24th of 06, that's the date of the plan. Now, there is in the record, Your Honor, that actually the plan finally was sent to Paula in February of 06. They had done some revisions and was backdated to January. But in May of 06, after the plan was entered into, effective date, there was an annual meeting and Paula and her husband, Doug, who is also here, talked with Ms. Flewett because they had known each other because Paula had been there for years. And at that meeting, Ms. Flewett approached the possibility that Paula could go and work at Sussex. And Paula said, I'm happy at Diamond State and I'm not going to leave. So the testimony would be there was never an intention of her to retire. She never discussed with the board, oh, I'm retiring tomorrow, as Eva Thomas did. Had she wanted to retire, she could have done what Eva Thomas did. How is this related to consideration? Pardon? How is this related to consideration? I thought that was Judge Lowe's point. What would you introduce in evidence in support of consideration if you had the opportunity to do that? Well, that's what I was saying. Paula would testify that I had no intention to retire. There was never a discussion about retiring. I continued to retire. I continued to work. And it wasn't until two years later when Ms. Flewett of Sussex approached her that she then said, I will go. And by the way, and she said this and I've got 43 seconds. She said to Paula in an email, did you tell me you do not need health benefits? And Paula said, yes, Diamond State is paying for that. She said, that will make it easier to hire you. So everybody knew that Paula was continuing to work at Diamond State even after she left. I want you in the final seconds here to address the notion of reward, that it contemplates actions in the past, not the future, and her acknowledgement of the same in her deposition testimony that she believed it was for what she had done in the past because she could have left that very day. How do you deal with that? Well, I deal with it in a variety of ways, Your Honor. First of all, Paula's deposition testimony does not change the language of the contract. It was extrinsic evidence that seven years later, belied by what happened, which was she continued to work, it was speculation. But if she was not required to continue to work, it was a reward and it was not a contract. But that's not consideration. Then the judge was right. It wasn't consideration. Correct? No, Your Honor, because the evidence is when she was asked the question, so you could have retired the next day, not immediately, so you could have retired the next day, she said, yeah. But that doesn't mean that it was a gratuitous promise with no consideration. What it says is for your continuous service. And at trial, Judge Ambrose, we would put in testimony from Paula, Gina Brainerd, and others as to the circumstances under which this benefit was provided to her. So it's our position that the law does not require a set time. All it requires, particularly if you have a unilateral contractor on, is continued performance, which is what she did. And we believe that we should have the right to go to trial, present our evidence, have a full trial on the merits, particularly these other issues. And we believe that Judge Ambrose was correct on the statute of limitations. That can be down the road, revisited with this court. I don't believe the court wants to necessarily decide whether Judge Ambrose was right or wrong on the statute of limitations. We submit that the time that the claim accrued was later than May 14th, which is what Judge Ambrose held. We've got your argument on that one. Okay. Thank you very much. Thank you, Your Honors. I appreciate it. Thank you to both counsel. We'll take the matter under advisement.